**Cheryl A. NULL (Burress),**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 29A02–9701–CR–12.**

Court of Appeals of Indiana.

Jan. 27, 1998.

R. Scott Sirk, Fishers, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, John B. Herriman, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Cheryl A. Null (Null), appeals her conviction for Arson, a class B felony.

We affirm.

Null presents three issues on appeal, which we restate as follows:

(1) Whether the trial court erred in admitting evidence obtained as a result of an unconstitutional search.

(2) Whether the trial court erred by excluding certain exhibits offered as demonstrative evidence.

(3) Whether the trial court erred by denying Null's motion for mistrial after a witness referred to Null's prior felony conviction.

On May 31, 1994, the Arcadia volunteer fire department responded to a house fire at the residence Null shared with her then husband Mark, who was a Deputy Marshall for the town of Arcadia. At the time of the fire, Null was the only person home. Fire Chief Bangle of the Arcadia volunteer fire department was first on the scene, and he was later joined by Chief Overmeyer of the Carmel fire department. After the fire was extinguished shortly after 4:00 a.m., both Bangle and Overmeyer started the process of attempting to determine the cause and origin of the fire. In order to gain assistance in making the determination, Chief Bangle contacted the Indiana State Fire Marshall's Office.

At around 9:10 a.m., Indiana State Police Detective Chris Wilson instructed Detective Knapp, a laboratory field technician, to go to the fire scene. At around 10:45 a.m., Bill Tuck, a field investigator for the State Fire Marshall's Office arrived on the scene. Tuck met with Bangle, who asked him to investigate the cause and origin of the fire. Tuck testified that Bangle did not turn the fire scene over to him at that point. Bangle and Overmeyer briefly walked Tuck through the home to investigate. Before a cause and origin was determined, Bangle left the scene; however, several fire fighters remained on site.

Detective Knapp arrived at around 10:00 a.m., where, in addition to taking photographs, he made a videotape which included several areas of the interior of the home. Knapp did not have a warrant to conduct a search of the residence. A member of the fire department was present when Knapp made the videotape.

Meanwhile, Tuck left the scene in order to observe Cheryl Null's interview with Detective Kaiser of the Hamilton County Sheriff's Department. Tuck testified that he wanted to view the interview because he wanted to gain as much knowledge as he could as to what Null was saying she thought had happened at the scene. During the interview, Detective Kaiser accused Null of deliberately setting the fire. Tuck testified that, at the time he left the scene to attend the interview, he had not yet formed a preliminary opinion as to the cause and origin of the fire. However, he was having trouble understanding how there could have so much fire in the room and Null not have been burned or killed.

Approximately two hours later, following the interview, Tuck returned to the scene where he was assisted by Bob Dean, the chief investigator for the State Fire Marshall's Office. Tuck contacted Dean before he left to view the interview. Tuck and Dean stayed together at the scene until around 4:00 or 4:30 p.m. After conducting another search of the premises, Tuck and Dean determined that the fire had been intentionally set. At trial, Null objected to the State's attempt to introduce evidence, specifically the videotape footage taken by technician Knapp, which was taken inside the burned-out home after Tuck had left the fire scene.

Also during her trial, Null offered three exhibits which were excluded by the court. The first two exhibits consisted of a videotape of a burn test and a written synopsis. The experiment was conducted the day before trial, while the corresponding synopsis was created the day the trial began. The court had ordered that discovery be completed before trial. The court sustained the State's objection to admission of the two exhibits because they violated the court ordered discovery deadline. The third exhibit, which consisted of two videotapes prepared by the National Fire Protection Association, included demonstrations of how a "flashover" fire might occur. These tapes were excluded because the court concluded that the prejudicial impact outweighed the probative value.

Finally, during cross-examination of a defense witness, the State asked the witness about an encounter she had with Null the night of the fire. Null did not object to the question, and the witness responded with a lengthy narrative answer. At the end of her answer, the witness stated that Null told her: "she was a felon and had nothing to lose." Record at 2016. Before trial, the court had granted Null's motion in limine, which prohibited any mention of past crimes. The court admonished the jury to disregard the State's last question and the witness' answer.

### SEARCH AND SEIZURE

■ Null argues that because both Tuck's and Knapp's searches were conducted without a warrant or consent, the court committed reversible error by admitting evidence obtained through these searches because they violated the prohibitions against unreasonable searches and seizures contained in both the United States Constitution and the Indiana Constitution.

In *Michigan v. Clifford* (1984), 464 U.S. 287, 292, 104 S.Ct. 641, 646, 78 L.Ed.2d 477, the United States Supreme Court held that the constitutionality of warrantless and non-consensual entries onto fire-damaged premises normally turns on three factors: whether

there are legitimate privacy interests in the fire-damaged property which are protected by the Fourth Amendment; whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy; and whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity.

Because of the extensive fire damage to her residence, Null no longer had a reasonable expectation of privacy in the burned-out portions of her home. Therefore, neither search violated any Fourth Amendment protection.

In *Michigan v. Tyler* (1978) 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486, the Court observed that privacy expectations vary with the type of property, the amount of fire damage, the prior and continued use of the premises, and in some cases, the owner's efforts to secure it against intruders. In *Clifford, supra*, 464 U.S. at 292, 104 S.Ct. at 646, the Court held that some fires may be so devastating that no reasonable privacy interest remain in the ash and ruins, regardless of the owner's subjective expectations. Consequently, the Court found that, when determining whether a reasonable privacy interest remained in fire-damaged property, the test was whether "the expectation is one that society is prepared to recognize as reasonable." *Id.*

Here, Null's modular home was uninhabitable after the fire, although some items within the home were fire-damaged but intact. The house remained unoccupied after the fire, and was eventually bulldozed. Photographs taken at the scene, and admitted at trial, show that the interior of the home was basically reduced to burned-out rubble. Because of the severity of the fire damage, society would not have reasonably recognized an expectation of privacy in the burned-out portions of the home which were searched by Tuck or Knapp. Therefore, the admission of evidence obtained through either search did not violate the Fourth Amendment prohibition against unreasonable searches or seizures.

In evaluating the constitutionality of warrantless searches under Article 1, § 11 of the Indiana Constitution, we employ a reason-ableness test. In *Moran v. State* (1994) Ind., 644 N.E.2d 536, 540, *reh'g denied*, the Court held that the purpose of Article 1, § 11 was "to protect from unreasonable police activity, those areas of life that Hoosiers regard as private." Again, even under the arguably more liberal protection afforded by Indiana constitutional analysis, because of the severity of the damage to the interior of her home, the limited searches conducted by Tuck or Knapp were not violative of the Article 1, § 11 protections.

## EXCLUSION OF EXHIBITS

■ Demonstrative evidence is evidence offered for the purpose of illustration and clarification. *Underly v. Advance Mach. Co.* (1993) Ind.App., 605 N.E.2d 1186, 1195, *trans. denied.* To be admissible, demonstrative evidence need only be sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. *Id.*

■ The court chose to exclude exhibits # A–1, # A–2, and exhibit # Z. Exhibit # A–1 was a tape of a small scale burn test conducted by Null's expert witness on March 5, 1996. Exhibit # A–2 was a written synopsis of the test prepared on March 6, 1996. Null's counsel first acknowledged the existence of the exhibits during trial, after the State had completed its case in chief. Null explained that his expert had just completed the tests, and as soon as he had possession of the exhibits, he attempted to contact the prosecution and offer an opportunity to view the exhibits. The court denied admission of Exhibits # A–1 and # A–2 because they did not comply with discovery guidelines. Null made a motion to reconsider the decision on admissibility of # A–1 and # A–2, which was denied by the court on March 11, 1996 after viewing the tape.

■ Exhibit # Z consisted of two videotapes, which contained research conducted by the National Fire Protection Association. Both tapes included demonstrations of fires, one real-life, one animated and also included explanations of how a flashover might occur. The court excluded exhibit # Z because its possible prejudicial value outweighed the

probative value, due to numerous differences in the material displayed on the tape and the conditions present at the crime scene. The judge also noted in her ruling on Exhibit # Z that the tape fell outside the framework of the discovery order. At trial, Null's expert testified at length about the flashover phenomenon.

■ The trial court has broad discretionary latitude in discovery matters as part of its "inherent power to guide and control the discovery proceedings." *Nettles v. State* (1991) Ind., 565 N.E.2d 1064, 1067. Moreover, the trial court is usually in the best position to determine what remedial measures are appropriate when there has been a failure to provide discovery. *Armstead v. State* (1989) Ind., 538 N.E.2d 943, 945. Absent clear error and resulting prejudice, the trial court's determination will not be overturned. *Id.* Because exhibits # A–1 and # A–2 violated the court's discovery order, and because exhibit # Z contained an explanation of flashover conducted under conditions that were not at all similar to the conditions which existed at Null's residence, the exhibits were properly excluded. Furthermore, Null suffered no prejudice because her expert testified in detail about the flashover phenomenon.

### *MOTION FOR MISTRIAL*

■ Mistrial is an extreme remedy warranted when no other curative measures will rectify the situation and is a matter which is committed to the sound discretion of the trial court. *James v. State* (1993) Ind., 613 N.E.2d 15. When determining whether a mistrial is warranted for erroneous admission of evidence of defendant's prior criminal history, we consider whether the defendant was placed in a position of grave peril to which she should not have been subjected; the gravity of peril is determined by the probable persuasive effect on the jury's decision. *Id.* A trial judge is in the best position to gauge surrounding circumstances and potential impact on the jury when deciding whether mistrial is appropriate for erroneous admission of evidence of defendant's criminal history. *Id.* A timely accurate admonition is presumed to cure any error in the admission of evidence. *Id.* On appeal, where the jury's verdict is supported by independent evidence of guilt such that we are satisfied that there was no substantial likelihood that the evidence in question played a part in the defendant's conviction, any error in admission of prior criminal history may be harmless. *Id.*

■ Null has failed to show the requisite amount of prejudice imposed by the mention of her previous felony conviction. We acknowledge that it is a general rule that evidence of a defendant's prior criminal history is highly prejudicial and should not be admitted. *Roche v. State* (1992) Ind., 596 N.E.2d 896, 901. However, we hold that the probable prejudicial effect here was minimal and that, in any event, the reference was cured by the court's admonishment.

In this instance, the trial court admonished the jury to disregard, not only the State's question, but the entire response which included the remark about Null's felony conviction. Additionally, the state presented overwhelming evidence of Null's guilt by presenting witness testimony regarding her conduct the night of the fire, her statements about burning the house, forensic evidence that the fire was intentionally set, and evidence that Null had lied during her initial interview with police.

The judgment is affirmed.

FRIEDLANDER and KIRSCH, JJ., concur.