Richard W. OSBORNE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 59A01–0309–CR–331.

Court of Appeals of Indiana.

March 25, 2004.

Larry W. Medlock, Medlock Law Office, Paoli, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Today we are asked to determine whether a police officer may encourage a person on home detention to speed through an inhabited area while under the influence of alcohol and drugs in order to effectuate a pretextual stop to allow them to detain and search the occupants of the vehicle. We find that they may not.

Appellant-defendant Richard W. Osborne brings this interlocutory appeal challenging the trial court's denial of his motion to suppress evidence. Specifically, he challenges the reasonableness of the stop under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution.[1]

### FACTS

On the evening of June 10, 2002, David Turner placed a call to Officer Greg Ashby of the Indiana State Police informing Officer Ashby that he would be bringing Osborne to French Lick and that Osborne had cocaine in his possession. Turner and Officer Ashby entered into an agreement whereby Turner would drive through French Lick with Osborne in the car and exceed the posted speed limit so that the police could pull him over. In exchange, Turner wanted Officer Ashby to speak with the prosecutor regarding Turner's girlfriend, who was facing charges of dealing in cocaine in Orange County. There was no showing that Turner had previously provided reliable information to the police as an informant, and he had been involved in crimes of dishonesty, including theft and writing bad checks. At the time of the call to Officer Ashby, Turner was on home detention, which was known to Officer Matthew Powell of the French Lick Police Department. Moreover, Turner testified in his deposition that he informed Officer Ashby that he had been drinking all day and had consumed cocaine. This testimony was not disputed by the State.

After speaking with Turner, Officer Ashby made arrangements with Officer Powell and Officer Kirby Stailey of the Indiana State Police as to where they were to be at the specified time that Turner's vehicle would be passing through Prospect on the way to French Lick so that they could assist Officer Ashby. Officer Stailey and his canine were to be in the vicinity waiting for Officer Ashby's call to assist by having the canine "trot" the vehicle for drugs.

Later that day, Turner told Osborne that he could "get him some women in French Lick," Appellant's Br. p. 3, so they

---

1. Oral argument was held in this case on February 24, 2004 in Mitchell, Indiana. We would like to thank the Honorable Michael A. Robbins for organizing this outing where we were able to interact with the faculty, staff, and students of Mitchell High School and with the Lawrence County Bar. We thank all for their hospitality and interest in the appellate process.

got into the Honda Prelude owned by Turner's girlfriend and drove toward French Lick. At approximately 10:00 p.m.—precisely the time that was agreed upon—Turner drove through Prospect and passed Officers Ashby and Powell. Turner turned into the parking lot of a convenience store, and Osborne exited the vehicle and began walking toward the convenience store. Officer Ashby pulled in behind Turner's vehicle, blocking it, and activated the emergency lights. At Officer Powell's request, Osborne got back inside the vehicle.

The stop was videotaped from the cameras inside the officers' car. During the stop, Officer Ashby said to Turner, "I'm going to write you a ticket just to make it look ... besides you had a light out." Appellant's App. p. 107. Officer Ashby also later stated to Turner, "I'm going to let you go so that we don't blow...." Appellant's App. p. 114. Both times he cut his statements short before completing them. Officer Ashby ultimately issued to Turner a warning for having a defective headlamp and citations for driving while suspended and failing to wear a seatbelt. Officer Ashby testified, "I didn't stop him for speed, I stopped him for the head light." Tr. p. 29.

Officer Stailey walked his canine around the exterior of Turner's vehicle, and the dog gave a positive indication to the passenger side door. Appellant's App. p. 175–76. Officer Stailey then returned his canine to his vehicle and requested that Osborne exit Turner's vehicle. Officer Stailey informed Osborne of his *Miranda* rights and asked if he had any drugs in the vehicle or on his person. Osborne responded that he had cocaine on his person in his right front pocket, and Officer Stailey retrieved the cocaine from Osborne's pocket. Officer Ashby took Turner home, and Osborne was arrested.

The State charged Osborne with Possession of Cocaine[2], a class C felony. On December 12, 2002, Osborne filed a motion to suppress the evidence seized during the traffic stop. On July 7, 2003, a hearing was held on Osborne's motion to suppress, and the trial court denied the motion, finding that the passenger in a vehicle has no constitutional right to challenge the stop and that the totality of the circumstances as known to the police officers demonstrated that the police acted appropriately when they stopped Turner's vehicle. The trial court certified its ruling for interlocutory appeal on August 22, 2003, and we accepted jurisdiction.

## DISCUSSION AND DECISION

In resolving the issues presented, we first note that when reviewing a trial court's decision to deny a motion to suppress, our review is similar to other sufficiency matters. *Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001) (citing *Goodner v. State*, 714 N.E.2d 638, 641 (Ind.1999) (decided based upon the Fifth Amendment)). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

Article One, Section 11 of the Indiana Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

2. Ind.Code § 35–48–4–6.

The Fourth Amendment of the United States constitution contains a nearly identical provision. However, Indiana courts interpret and apply Section 11 independently from federal Fourth Amendment jurisprudence. *Francis v. State*, 764 N.E.2d 641, 646 (Ind.Ct.App.2002). Inasmuch as we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable, the Indiana constitution provides more liberal protection against search and seizure than does the federal constitution. *State v. Stamper*, 788 N.E.2d 862, 865 (Ind.Ct. App.2003); *Null v. State*, 690 N.E.2d 758, 761 (Ind.Ct.App.1998).

■ We observe that the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The subjective intentions of the officer play no role in determining the reasonableness of the stop under the Fourth Amendment. *Id.* at 813, 116 S.Ct. 1769. Moreover, pretextual stops are not unreasonable under the Indiana Constitution provided the officer has probable cause to believe there has been a traffic violation. *Mitchell v. State*, 745 N.E.2d 775, 787 (Ind.2001). However, we note that when evidence is obtained in violation of the constitution, such evidence may not be used against a defendant at trial. *Frasier v. State*, 794 N.E.2d 449, 457 (Ind.Ct.App.2003). "[T]he exclusionary rule is designed to deter police misconduct...." *Figert v. State*, 686 N.E.2d 827, 834 (Ind.1997). *See also Quinn v. State*, 792 N.E.2d 597, 603 (Ind.Ct.App.2003) ("The [*U.S. v.*] *Green* [111 F.3d 515, 523 (7th Cir.1997)] court described the exclusionary rule as being calculated to prevent, not repair, police illegality by removing the incentive to disregard constitutional guarantees").

■ We note that Osborne argues, and the State conceded at oral argument, that he has standing to contest this stop as the passenger of the vehicle. The trial court correctly noted that this court has previously stated that "[a] person has no standing to object to a search of a car based merely upon the fact that he or she was a passenger legitimately riding in the car at the time of the search." Appellant's App. p. 11–12 (citing *Porter v. State*, 570 N.E.2d 1324, 1325 (Ind.Ct.App.1991); *Groff v. State*, 415 N.E.2d 721, 726 n. 8 (Ind.Ct. App.1981)). However, a different panel of this court more recently acknowledged that, "Every person in a motor vehicle has a right to contest the stop of the vehicle in which he is traveling as either a driver or passenger." *McKnight v. State*, 612 N.E.2d 586, 588 (Ind.Ct.App.1993) (citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). We agree with Osborne and *McKnight* and find that he has standing to raise this claim.

■ Our research has revealed no reported case in any American jurisdiction similar to the circumstances presented here. The nearest available analogy is to a "controlled buy" situation. A "controlled buy" occurs when an undercover police officer or a private citizen acting as an agent of the police under strict police supervision and control purchases illegal drugs from a dealer. Indiana courts have long approved of this investigatory practice. *See McCollum v. State*, 582 N.E.2d 804 (Ind.1991); *Marlowe v. State*, 786 N.E.2d 751 (Ind.Ct.App.2003); *Whirley v. State*, 408 N.E.2d 629 (Ind.Ct.App.1980); *Locklayer v. State*, 317 N.E.2d 868, 162 Ind.App. 64 (1974). The key to the controlled buy is that the police are in control of the situation at all times. However, this case is easily distinguished from a controlled buy in light of compelling public policy concerns.

Indiana has long recognized the toll that impaired driving has taken on the general public and the state's interest in preventing accidents caused by drivers who are intoxicated. *Smith v. Cincinnati Ins. Co.,* 790 N.E.2d 460, 461 (Ind.2003). *See also State v. Gerschoffer,* 763 N.E.2d 960, 968 (Ind.2002) (observing that there is a "public danger of impaired driving" and a "legitimate law enforcement purpose of combating drunk driving"); *Ruge v. Kovach,* 467 N.E.2d 673, 681 (Ind.1984) (noting "Indiana's interest in keeping its highways safe by removing drunken drivers from its roads"); *State v. Snyder,* 732 N.E.2d 1240, 1244 (Ind.Ct.App.2000) (noting that the State has a "vital interest in promoting public safety by clearing the roads of drunk drivers, who are a threat to other motorists, pedestrians, and themselves."); *Schrefler v. State,* 660 N.E.2d 585, 588 (Ind.Ct.App.1996) (recognizing the State's interest in keeping its highways safe from intoxicated drivers); *see also* Governor's Council on Impaired & Dangerous Driving 2002 Annual Report 6 (2003) (noting that in the year 2001, 337 people died in alcohol-related crashes in Indiana). To be sure, our supreme court recently declared that impaired driving is so dangerous that the county that borders the county in which the impaired driving occurred is sufficiently affected by the activity that it is an appropriate venue for a defendant's criminal trial. *See Baugh v. State,* 801 N.E.2d 629, 629 (Ind.2004). Moreover, our supreme court has also held that it is not a per se violation of our state constitution to randomly stop vehicles to conduct sobriety checkpoints even where there is no reasonable suspicion. *Gerschoffer,* 763 N.E.2d at 967.

Inasmuch as it is a policy of the utmost importance to the State of Indiana to prevent impaired driving, we find the police officers' conduct in this case to have been outrageously dangerous. The state troop-er knew from the conversation with Turner that Turner had been drinking and consuming cocaine that day. Appellant's App. p. 151, 154. The police flouted Indiana's public policy by agreeing to a plan that required Turner, a man they knew to have ingested both alcohol and cocaine, to drive upon our public highways in such a condition. They released a missile over which they had no control in the form of a Honda Prelude onto the streets of southern Indiana by not only failing to prevent Turner from driving, but actually encouraging him to drive by agreeing to and acting upon this plan. We cannot condone the actions of the police under these circumstances, and we extend the exclusionary rule to cover not only illegal conduct, but also outrageously dangerous conduct such as this by the police.

Additionally, as noted above, it is not unreasonable under either the federal or Indiana constitutions for an officer to make a pretextual stop. *Whren,* 517 U.S.at 810, 116 S.Ct. 1769; *Mitchell,* 745 N.E.2d at 787. But here, unlike in *Whren* and *Mitchell,* the police created the probable cause to stop the vehicle by allowing someone they knew to be under the influence of alcohol and drugs to speed through the community. As the United States Supreme Court observed in *Lewis v. United States,* "the particular circumstances of each case govern the admissibility of evidence obtained by stratagem or deception." 385 U.S. 206, 209, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). The stratagem employed by the officers here goes above and beyond pretext, and, under the particular circumstances of this case, was unreasonable.

Moreover, the police by their actions encouraged Turner to violate the terms of his home detention. An offender

who is on home detention may not leave his home unless he is:

(A) working at employment approved by the court or traveling to or from approved employment;

(B) unemployed and seeking employment approved for the offender by the court;

(C) undergoing medical, psychiatric, mental health treatment, counseling, or other treatment programs approved for the offender by the court;

(D) attending an educational institution or a program approved for the offender by the court;

(E) attending a regularly scheduled religious service at a place of worship; or

(F) participating in a community work release or community restitution or service program approved for the offender by the court.

Ind.Code § 35–38–2.5–6. Additionally, an offender on home detention may not leave his home under other circumstances unless he has documented permission from the supervising entity. Ind.Code § 35–38–2.5–13. No such permission is apparent from this record.

We can only conclude that none of these exceptions apply here. Even if this situation could be considered "community restitution," there is no evidence that Turner or any police officer sought approval by the court. Moreover, no one obtained documented permission from the entity supervising Turner's home detention for Turner to leave his home. Under the facts as outlined here, no court would have allowed Turner to leave his home. Based on the totality of the circumstances, this is the precise type of police misconduct that the exclusionary rule is meant to deter. We are confident that if not for the finding[3] that Osborne had no standing to raise a motion to suppress, the trial court would have reached the same conclusion.

Because the actions of the police could certainly be considered outrageously dangerous in these circumstances, we find that the intrusion here by the police was unreasonable. Inasmuch as reasonableness is the touchstone of the constitutional analysis, Osborne's rights under Indiana Constitution Article I, Section 11 were violated. Thus, his motion to suppress should have been granted. Because we conclude that the search violated his rights under the Indiana Constitution, we need not address Osborne's Fourth Amendment argument.[4]

The order of the trial court is reversed. We remand to the trial court with instructions to grant Osborne's motion to suppress.

Reversed and remanded.

NAJAM, J., and MAY, J., concur.

---

3. We commend the trial court for the depth and quality of its findings. They have been extremely helpful in our review of this issue.

4. We note that the State in oral argument attempted to raise the argument that the police had reasonable suspicion to stop Osborne because Turner was a reliable informant. However, the State did not argue this before the trial court, and, as such, may not raise it now. *State v. Friedel*, 714 N.E.2d 1231, 1237 (Ind.Ct.App.1999) ("An issue cannot be raised for the first time on appeal."). However, we observe that the record shows that Turner had not previously provided reliable information to the police.