

FILED
Apr 30 2015, 9:35 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Clifford M. Davenport<br>Davenport Law Offices<br>Anderson, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Justin F. Roebel<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bruce Angelo Evans,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Plaintiff* | April 30, 2015<br><br>Court of Appeals Case No.<br>48A02-1407-CR-496<br><br>Appeal from the Madison County<br>Circuit Court<br><br>The Honorable Judge Thomas<br>Newman, Jr.<br><br>Case No. 48C03-1402-FB-298 |

**Vaidik, Chief Judge.**

# Case Summary

[1]     A confidential informant performed a controlled buy of heroin from the
defendant, Bruce Angelo Evans.  At the jury trial, several witnesses who had
been present in the house where the controlled buy occurred or who were
otherwise associated with Evans and the confidential informant testified that

Evans had also sold them heroin on the day of the controlled buy. On appeal, Evans argues first that in light of the evidence of multiple acts of dealing, the trial court erred in failing to issue an instruction on jury unanimity, in order to ensure that all of the jurors relied on the same act of dealing to support Evans's conviction. We find that Evans waived this alleged error by failing to object to the jury instructions or offer one of his own. Moreover, we find that any error does not rise to the level of fundamental error because given that the overwhelming majority of evidence at trial was about the controlled buy, it is clear that this was the act of dealing that supported the jury's guilty verdict. Second, Evans argues that the trial court abused its discretion in admitting evidence of a large amount of cash – in addition to the buy money – found on Evans when he was searched by law enforcement officers after the controlled buy. But Evans failed to object when the evidence of this additional money was first offered into evidence, and thus has waived this claim on appeal. Waiver notwithstanding, we find that any error in the admission of this evidence was harmless insofar as there was substantial evidence supporting Evans's conviction regardless of the evidence of additional money. Accordingly, we affirm.

# Facts and Procedural History

[2] On the afternoon of February 18, 2014, Roberta Scherer[1] overdosed at a house (the 28th Street house) in Anderson, Indiana, where Evans was living. Another resident of the 28th Street house went to Scherer's mother's house three or four blocks away to notify the family of Scherer's condition, and Scherer's niece Shyanne "ran straight to her." Tr. p. 312. When Shyanne arrived, her aunt was "blue, not breathing, on the kitchen floor." *Id*. An ambulance was summoned and within a few hours Scherer recovered.

[3] Scherer's brother-in-law (and Shyanne's father), David Trueblood, who had served as a confidential informant before, contacted Lieutenant John Branson of the Anderson Police Department (APD) because of Scherer's overdose and his concern over the amount of drugs his family members were using. Detective Ryan Geer of the APD and Madison County Drug Task Force (the Drug Task Force) contacted Trueblood to ask if he would be willing to do a controlled buy from Evans that same day – February 18 – and Trueblood agreed to do so. Sergeant Frank Sigler of the APD, who was also assigned to the Drug Task Force, and Detective Geer picked up Trueblood at 8:00 p.m. and performed all the steps necessary for a controlled buy. First they took Trueblood to a remote location to check whether he had any drugs, weapons, or money. Then Trueblood was given buy money – four twenty-dollar bills that had previously been photocopied – and was equipped with two recording

---

[1] Roberta Scherer (called "Verna Scherer" by one witness, Tr. p. 311) also goes by the name of Bobby Gray, and is generally referred to in the transcript as Bobby.

devices and one device that enabled Detective Geer to monitor live feed throughout the transaction.

[4] Trueblood was dropped off near the 28th Street house at 9:08 p.m. He knocked on the back door of the 28th Street house at 9:11 p.m., indicating to Evans that he was buying the heroin for someone named Ryan and giving Evans the $80 of buy money in exchange for heroin. The entire exchange was recorded, and Trueblood was picked up again by the police officers at 9:15 p.m.

[5] After the buy, Trueblood was subjected to another search. He provided Detective Geer with a wrapper containing a substance that field-tested positive for heroin.[2] Trueblood had no other drugs, weapons, or money.

[6] The APD obtained a search warrant for the 28th Street house. Eight officers and detectives who were involved in executing the search warrant met to establish an action plan for announcing the search warrant and entering the house. The APD went to the 28th Street house, knocked repeatedly on the door, and announced for them to open the door for a police department search warrant, but nobody answered the door. Ultimately a "battering ram" was used to open the door. Evans was found cowering in the bathroom, attempting to hide in a space between the shower stall and the wall. Initially he refused to comply with repeated orders to come out and show his hands. Finally,

---

[2] The Indiana State Police Laboratory later confirmed that the substance Trueblood purchased from Evans was .20 grams of "heroin and controlled substance." *See* Tr. p. 441.

Lieutenant Branson used a taser on Evans and then "grabbed him out of there." Tr. p. 247.

[7] Evans was searched by the police, and in his pocket they found a brown leather wallet containing the $80 of buy money, an additional $1689 in cash, and the driver's license of Robert Gray.[3] Officers searched the house and discovered hypodermic syringes, spoons, a smoking pipe, a set of scales, and substances that could be used for diluting heroin. There were three other people in the house at the time of the search: Sheela Hall, Ashley Sparkman, and Hank Steffler, the teenage son of the homeowner. Hall observed the controlled buy – she saw Evans answer the back door and hand Trueblood something "kind of shiny." *Id.* at 461.

[8] Evans was charged with Count I, Class B felony dealing in a narcotic drug; and Count II, Class A misdemeanor false informing. Later an additional Count III was filed charging Evans with being a habitual substance offender. Before the trial, Evans filed a motion in limine stating that he had "reason to believe the State intend[ed] to introduce evidence of other crimes, wrongs, or acts to prove the character of the defendant . . . in violation of Indiana Rule of Evidence 404(b)." Appellant's App. p. 26. In particular, Evans's motion requested the

---

[3] Detective Geer testified that there was $1689 found in Evans's wallet – including ten one-hundred dollar bills "just really neatly pressed together[,]" Tr. p. 268 – and approximately $30 in change found in Evans's pocket. *See* Tr. p. 274 ("Well, I saw a pile, it looked like change . . . that they had taken out of his pocket. . . . I mean maybe thirty dollars."). The total amount of money found on Evans, in addition to the $80 of buy money, was $1703. *See* Tr. p. 275.

exclusion of testimony from multiple witnesses as to other overdoses and drug transactions, other than the controlled buy; and the exclusion of evidence about the money seized from Evans other than the buy money. The trial court ruled that evidence of drug transactions that occurred on February 18 – the date of the controlled buy – was "intrinsic" to the charged offenses and therefore admissible. The trial court denied Evans's motion with regard to the money.

[9] On June 10 and 11, 2014, a jury trial was held. At the trial, Sergeant Sigler, Lieutenant Branson, Detective Geer, Detective Leann Dwiggins of the Drug Task Force, and Detective Keith Gaskill of the APD and the Drug Task Force all testified as to the role each played in Trueblood's controlled buy. Brandy Cline, forensic scientist in the drug unit at the Indiana State Police laboratory, testified that the substance that Evans sold to Trueblood was .20 grams of heroin and controlled substance. *See* State's Ex. 11.

[10] In addition, numerous witnesses testified that they had also purchased heroin from Evans or at the 28th Street house on February 18. Scherer testified, "I went over there and bought some heroin off of him and winded up overdosing and going to the hospital." Tr. p. 330. Sparkman testified that she had purchased $20 of heroin from Evans earlier that day and was in the bathroom injecting it when Scherer overdosed. Robert Gray, Scherer's son, testified that he left the hospital after his mother was stable and went to Belmont Park to buy heroin from Evans. Trueblood testified that his daughter, Shyanne, purchased heroin from the 28th Street house after Scherer was released from the hospital.

[11] There was also testimony about the large sum of cash found in Evans's wallet during the search. Specifically, Detective Geer testified that in addition to the $80 of buy money, there was $1703 in cash found on Evans. *See* Tr. p. 268, 274-75. Evans did not object to Detective Geer's testimony. Evans did, however, object later when the State offered into evidence State's Exhibit 12, a photograph of the cash stacked and tagged as evidence. *See* State's Ex. 12. The trial court denied Evans's objection and admitted the exhibit into evidence.

[12] In final argument and rebuttal, the State focused primarily on recounting at length the facts of the controlled buy, but the State also mentioned the heroin sales to other individuals. "Is [Evans] guilty? You bet you he's guilty. He's guilty of selling heroin to . . . [Trueblood], [Sparkman], [Scherer], [Gray], he's guilty." Tr. p. 559. In rebuttal, the State referred a couple more times to acts of dealing other than the controlled buy. For example:

> Listen to the charge. It says on February 18, 2014 in Madison County, State of Indiana, Bruce Angelo Evans did knowingly or intentionally deliver a narcotic drug, to wit: heroin. Period. To anybody that day. What you heard was overwhelming evidence that he sold heroin.

*Id*. at 578.

Later in rebuttal, the State argued as follows: "This is overwhelming evidence of guilt. You've got three [] separate people that told you they bought heroin from this guy. You've got three [] separate people." *Id*. at 586.

[13] Before giving final instructions to the jury, the trial court asked whether the State or Evans had any objections to the proposed jury instructions, and there

were none.  Regarding jury unanimity, the trial court instructed the jury in part as follows:

> There should be no conviction of the defendant unless each and every member of the jury is convinced beyond a reasonable doubt, of the defendant's guilt.  The law contemplates and indeed demands the agreement of twelve minds in the conclusion that the defendant is guilty.

*Id*. at 599.

The jury found Evans guilty of Count I, Class B felony dealing in a narcotic drug; and not guilty of Count II, Class A misdemeanor false informing.  Evans pleaded guilty to Count III, habitual substance offender, and the trial court accepted his plea.  The trial court then sentenced Evans to sixteen years for the Class B felony dealing in a narcotic drug and four years for habitual substance offender, for a total sentence of twenty years, all executed.

Evans now appeals.

# Discussion and Decision

## I. Jury Unanimity

On appeal, Evans argues first that the trial court erred by failing to instruct the jury that they needed to reach a unanimous decision as to which sale of heroin supported the guilty verdict.  In other words, given that Evans was charged with a single count of dealing in a narcotic drug but there was testimonial evidence that Evans dealt heroin to multiple people on February 18 – including and in

addition to Trueblood's controlled buy – there needed to be jury unanimity as to which specific sale of heroin supported Evans's conviction.[4]

[17] Here the trial court instructed the jury in part as follows:

> There should be no conviction of the defendant unless each and every member of the jury is convinced beyond a reasonable doubt, of the defendant's guilt. The law contemplates and indeed demands the agreement of twelve minds in the conclusion that the defendant is guilty.

[18] *Id.* at 599. Clearly this instruction did not address the issue of which Evans now complains – that because there was some evidence of other acts of dealing in addition to the controlled buy, it is possible that the jury did not unanimously find Evans guilty of the same act of dealing. However, Evans did not object to the jury instruction regarding unanimity nor offer an instruction of his own. It is well established that a defendant who fails to object to an instruction at trial waives any challenge to that instruction on appeal. *Baker v. State*, 948 N.E.2d 1169, 1178 (Ind. 2011), *reh'g denied*. Likewise, the "[f]ailure to tender an instruction results in waiver of the issue for review." *Id.* (quoting *Ortiz v. State*, 766 N.E.2d 370, 375 (Ind. 2002)). Therefore we find that Evans has waived this claim of error unless fundamental error occurred.

[19] The fundamental-error doctrine provides a vehicle for the review of error not properly preserved for appeal. *Id.* In order to be fundamental, however, the

---

[4] Evans does not complain on appeal that these other acts were inadmissible under Indiana Rule Evidence 404(b).

error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. *Id*. (citing *Pope v. State*, 737 N.E.2d 374, 380 (Ind. 2000)). In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. *Id*. at 1178-79. Harm is not shown by the fact that the defendant was ultimately convicted. *Id*. at 1179. Rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id*.

[20] In this case, we acknowledge that there was some scattered testimonial evidence regarding other acts of dealing by Evans and a couple of questionable suggestions – in the State's rebuttal argument in particular – that those other acts of dealing could have some influence on the jury's guilty verdict. Nonetheless the overwhelming majority of evidence presented at Evans's trial was about the controlled buy. Five law enforcement officers testified as to the specific facts and procedures surrounding Trueblood's controlled buy. A forensic scientist from the Indiana State Police laboratory testified as to the lab results of the substance Evans sold to Trueblood in the controlled buy. And the State's closing argument undeniably focused at length on the facts and procedures of the controlled buy. Given the amount of evidence and arguments centered around the controlled buy, it is evident that this was *the* act of dealing on which the jury relied in finding Evans guilty. Therefore, we cannot say the

potential harm that may have resulted from the trial court's failure to issue an instruction on jury unanimity is so substantial that Evans was denied a fair trial or was deprived of fundamental due process as a result of the alleged error. *See Baker*, 948 N.E.2d at 1178-79. To avoid this issue in the future, however, we note that the better practice for the State is to be more specific in their charging information as to which act is the basis of the charge.

## II. Evidence of Evans's Additional Money

[21]     Next Evans argues that the trial court abused its discretion in allowing testimony as to the $1703 in cash found on Evans, in addition to the $80 of buy money. The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Dixon v. State*, 869 N.E.2d 516, 519 (Ind. Ct. App. 2007). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* However, when a defendant fails to object to allegedly inadmissible evidence the first time it is offered, no error is preserved. *Jenkins v. State*, 627 N.E.2d 789, 797 (Ind. 1993). Further, in order to preserve the allegation of error, appellant must object each time the allegedly inadmissible evidence is offered. *Id.*

[22]     In this case, Evans objected in his motion in limine to the admission of evidence regarding "Money seized from the Defendant, other than the controlled buy money." Appellant's App. p. 27. The trial court denied this

motion. At trial, Detective Geer testified at some length about the additional money found in Evans's wallet and pocket, and Evans failed to object to this testimony. Evans did object later, when the State offered into evidence State's Exhibit 12, a photograph of the cash stacked and tagged as evidence. *See* State's Ex. 12. At that point, the trial court denied Evans's objection and admitted the exhibit into evidence. This later objection, however, is insufficient to preserve the error on appeal. This is so because when a defendant fails to object to allegedly inadmissible evidence the first time it is offered – and every time the allegedly inadmissible evidence is offered thereafter – no error is preserved. *See Jenkins*, 627 N.E.2d at 797. We find, therefore, that Evans has waived this issue.

[23] Waiver notwithstanding, error, if any, in the admission of this evidence was harmless. We agree with Evans that "[t]he additional money was not necessary to prove that the controlled buy had been made." Appellant's Br. p. 20. But that is because there was such overwhelming evidence to support Evans's conviction regardless of the evidence of the additional money. "The improper admission [of evidence] is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011). In light of the testimony of multiple law enforcement officers regarding the facts and procedures of the controlled buy, the recording of the transaction between Trueblood and Evans, the physical evidence recovered from the house, the buy

money found in Evans's wallet, and the laboratory results of the substance sold to Trueblood by Evans in the controlled buy, we find that there was such substantial independent evidence of Evans's guilt that there is no substantial likelihood the admission of evidence about additional money found on Evans contributed to his conviction. *See Turner*, 953 N.E.2d at 1059.

Affirmed.

Kirsch, J., and Bradford, J., concur.