## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 04 2015, 8:28 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marcus Blackmon,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 4, 2015

Court of Appeals Case No.
49A02-1412-CR-890

Appeal from the Marion Superior
Court.
The Honorable Steven R. Eichholtz,
Judge.
Cause No. 49G20-1210-FA-68486

**Barteau, Senior Judge**

## Statement of the Case

[1]     Marcus Blackmon appeals his convictions of dealing in a narcotic drug, a Class A felony, Indiana Code section 35-48-4-1 (2006); possession of a controlled substance, a Class D felony, Indiana Code section 35-48-4-7 (2011); two counts

of resisting law enforcement, as Class A misdemeanors, Indiana Code section 35-44.1-3-1 (2012); and escape, a Class C felony, Indiana Code section 35-44.1-3-4 (2012). We affirm.

## Issue

Blackmon presents a single issue for our review, which we restate as: whether the trial court abused its discretion by admitting certain evidence at trial that was obtained following a warrantless traffic stop.

## Facts and Procedural History

In October 2012, Detective Wolfe of the Indianapolis police force was observing a Buick vehicle and its occupants in relation to an ongoing investigation. The Buick was parked in a parking lot next to another vehicle, and Detective Wolfe observed what he believed to be a possible hand-to-hand drug transaction between the occupants of the two vehicles. When the Buick left the parking lot, Detective Wolfe observed that the Buick's driver failed to signal when turning and traveled eastbound in the westbound lane of travel. At that time, Detective Wolfe relayed this information over his radio and called for assistance.

Sergeant McDonald, who was assisting Detective Wolfe, heard the request to stop the Buick. Although Sergeant McDonald did not witness the initial traffic violations, he did note a third violation upon locating the vehicle — the tinting on the Buick's windows was too dark. Sergeant McDonald initiated a traffic stop of the Buick, and the driver of the Buick pulled into a parking space at a

gas station. As Sergeant McDonald walked up to the Buick, the driver opened the door. Sergeant McDonald saw pieces of marijuana in the hand rest of the driver's door and smelled a strong odor of marijuana coming from the car. The driver of the vehicle then informed Sergeant McDonald that he did not have a license. Sergeant McDonald called for back-up.

[5] Officer Reetz arrived to assist Sergeant McDonald. Officer Reetz asked Blackmon, who was the passenger in the Buick, to exit the vehicle, turn around and put his hands on his shoulders. Blackmon exited the vehicle, put his hands up, and then began to run from the scene. Both officers pursued Blackmon. Officer Reetz grabbed Blackmon's sweatshirt and wrestled him to the ground. As Blackmon struggled, he continued to reach for his pants pocket. Eventually, Blackmon pulled a pill bottle from his pocket and tossed it away from the immediate area. When the pill bottle hit the ground, it burst open and sixty-five small foil packets fell out. The officers tried to handcuff Blackmon, but they were unable to do so because he continued to struggle. Sergeant McDonald administered dry stuns with a Taser to the middle of Blackmon's back, and the officers eventually got him handcuffed. Once handcuffed, Blackmon was searched and three pills were located in his jeans pocket in addition to a "wad of cash." Tr. p. 101. At that time, Blackmon was placed in the back of a police car. Blackmon was able to get out of the police car, and he again ran from the scene. By then, Detective Wolfe had arrived at the scene, and he chased Blackmon and eventually apprehended him.

[6] Based on this incident, Blackmon was charged with dealing in a narcotic drug, a Class A felony; possession of a narcotic drug, a Class C felony[1]; possession of a controlled substance, a Class D felony; two counts of resisting law enforcement, as Class A misdemeanors; and escape, a Class C felony. A bench trial was held on these charges at which Blackmon objected to the admission of any evidence obtained as a result of the traffic stop. The evidence was admitted over objection, and the State presented testimony that the foil packets contained heroin. The three pills from Blackmon's pants pocket were also tested and determined to be Oxycodone. Blackmon was found guilty of all charges. His conviction of possession of a narcotic drug was merged into his conviction of dealing in a narcotic drug, and Blackmon was sentenced to an aggregate sentence of thirty years with ten years suspended.

## Discussion and Decision

[7] Blackmon contends that the trial court erred when it denied his motion to suppress the evidence prior to trial and when it admitted the evidence over his objection at trial. Because Blackmon appeals following a completed trial, the issue is simply whether the trial court abused its discretion by admitting the evidence at trial. *See Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. The discretion afforded the trial court is broad, and an abuse of this discretion occurs when a decision is clearly against the logic and effect of

---

[1] Ind. Code § 35-48-4-6 (2006).

the facts and circumstances before the court. *Paul v. State*, 971 N.E.2d 172, 175 (Ind. Ct. App. 2012).

[8] In reviewing a trial court's ruling on the admissibility of evidence from an allegedly illegal search, we do not reweigh the evidence. *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). Rather, we defer to the trial court's factual determinations, unless clearly erroneous, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* Further, we consider anew any legal question of the constitutionality of a search or seizure. *Id.*

[9] Here, Blackmon asserts that his convictions arose from a pretextual stop and subsequent search of his person that violated his rights under both the federal and Indiana constitutions. He argues that he was stopped merely so the officers could further their ongoing investigation and that Detective Wolfe called for assistance and then "sought some sort of reason to make the stop." Appellant's Br. p. 15. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. Likewise, article I, section 11 of the Indiana Constitution protects citizens from unreasonable searches and seizures. Despite the similarity of the two provisions, Indiana courts interpret and apply article I, section 11 independently from the Fourth Amendment. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).

### *Fourth Amendment*

[10] The safeguards of the Fourth Amendment extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Porter v. State*, 985

N.E.2d 348, 353 (Ind. Ct. App. 2013). The burden is on the State to demonstrate that the measures it used to seize evidence were constitutional. *Id.* A traffic stop is a seizure under the Fourth Amendment, and, accordingly, the police must possess at least a reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). Such reasonable suspicion must encompass more than hunches or unparticularized suspicions; that is, an officer must be able to point to specific facts giving rise to a reasonable suspicion of criminal activity. *Denton v. State*, 805 N.E.2d 852, 855 (Ind. Ct. App. 2004), *trans. denied.* Further, the subjective intentions of the officer do not factor into the determination of the reasonableness of the stop under the Fourth Amendment. *Osborne v. State*, 805 N.E.2d 435, 439 (Ind. Ct. App. 2004), *trans. denied.*

[11] At both the hearing on the motion to suppress and at trial, the State conceded that the stop was pretextual but argued that it was also legal. Tr. pp. 15, 95. At the hearing on Blackmon's motion to suppress, Sergeant McDonald testified as follows:

> McDonald: They were conducting surveillance of this particular vehicle and the individuals in it and that they believed that they were involved in drug trafficking.
>
> Defense Counsel: Okay. Was there any discussion of a traffic pull over or traffic infractions if you recall?
>
> McDonald: They — yeah. The intent was to stop this vehicle.
>
> Defense Counsel: To stop it for a traffic infraction?
>
> McDonald: Yes.

Defense Counsel: Okay. Was there — were you given any basis for an infraction before you pulled them over?

McDonald: Yes.

Defense Counsel: Okay. What was that basis?

McDonald: They were driving the wrong way on the — 21st Street and didn't use a turn signal.

*Id.* at 37-38. And later:

Defense Counsel: Sergeant McDonald, Detective Wolfe asked you to stop this vehicle before he relayed any information about the traffic violations, right?

McDonald: I think the goal was to get the vehicle stopped, yes. But no, he didn't say, "Stop his car."

Defense Counsel: The goal of this investigation was to stop the car. You knew he wanted the car stopped before he had relayed to you that there were traffic violations?

McDonald: Yeah. If we did observe some violations and had enough reasonable suspicion to stop this vehicle, yes. He wanted the car stopped. But it wasn't until traffic violations were observed that I did stop the car.

*Id.* at 40-41.

[12] Likewise at trial, Sergeant McDonald testified that he received a request on his police radio to stop the Buick that had been observed by Detective Wolfe failing to signal and driving on the wrong side of the road. Both of these actions constitute traffic violations. *See* Ind. Code §§ 9-21-8-25 (1991), 9-21-8-2 (1991). Moreover, upon locating the Buick, Sergeant McDonald noticed that its window tinting appeared to be too dark in violation of Indiana Code section 9-19-19-4(c) (2003). These circumstances indicate that when Sergeant McDonald

conducted a traffic stop on the Buick, he possessed more than a reasonable suspicion that three traffic laws had been violated.

### *Article I, Section 11*

[13] Concluding that the traffic stop did not violate Blackmon's Fourth Amendment rights, we now turn to the separate argument under the Indiana Constitution. Under Indiana constitutional analysis, we examine the circumstances of each case to determine whether police behavior was reasonable. *Mitchell*, 745 N.E.2d at 786. The State bears the burden of showing that the intrusion was reasonable in light of the totality of the circumstances. *Id.* "A police stop and brief detention of a motorist is reasonable and permitted under Section 11 if the officer reasonably suspects that the motorist is engaged in, or about to engage in, illegal activity." *Id.* "Reasonable suspicion exists if the facts known to the officer, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Id.*

[14] Moreover, the courts of our state have determined that pretextual stops are not unreasonable under the Indiana Constitution provided the officer has probable cause to believe there has been a traffic violation. *Osborne*, 805 N.E.2d at 439. Our supreme court explained that:

> We find nothing unreasonable in permitting an officer, who may have knowledge or suspicion of unrelated criminal activity by the motorist, to nevertheless respond to an observed traffic violation. It is likewise not unreasonable for a motorist who commits a traffic law violation to be subject to accountability for said

violation even if the officer may have an ulterior motive of furthering an unrelated criminal investigation.

*Mitchell*, 745 N.E.2d at 787.

Here, Sergeant McDonald received information from Detective Wolfe that the occupants of the Buick had been involved in a possible hand-to-hand transaction. Detective Wolfe asked the officers, including Sergeant McDonald, to stop the Buick, and told them that he had observed two different traffic violations — failure to signal and driving on the wrong side of the road. Upon stopping the Buick, Sergeant McDonald identified a third violation regarding the window tint. All three of these violations are completely independent of any possible drug transaction, and all three constitute traffic violations. Thus, while the stop may have been pretextual, we conclude that Sergeant McDonald had reasonable suspicion of traffic violations to conduct a traffic stop of the Buick.

## Conclusion

For the reasons stated, we conclude that the traffic stop of the Buick did not violate Blackmon's constitutional rights. Accordingly, the trial court did not abuse its discretion in admitting at trial the evidence seized as a result of the stop.

Affirmed.

Baker, J., and May, J., concur.