## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 21 2016, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Special Assistant to the State Public Defender
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| George Dixon, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 21, 2016 <br><br> Court of Appeals Case No. 84A01-1601-CR-312 <br><br> Appeal from the Vigo Superior Court <br><br> The Honorable John T. Roach <br><br> Trial Court Cause No. 84D01-1301-FB-212 |

**Crone, Judge.**

# Case Summary

[1] A confidential police informant drove to the home of George Dixon, who sold her cocaine, and then drove to a staging area to meet the police officers who had arranged and observed the controlled buy. Unbeknownst to the officers, the informant's driver's license was suspended. The State charged Dixon with class B felony dealing in cocaine, and a jury found him guilty as charged.

[2] Dixon asserts that his conviction should be overturned, claiming that the officers engaged in "outrageously dangerous" behavior by arranging for the informant to drive when it was illegal for her to do so and that the trial court therefore erred in admitting evidence regarding the controlled buy. Appellant's Br. at 4. We conclude that Dixon waived this issue by failing to object to testimony regarding the controlled buy and the cocaine at trial. Waiver notwithstanding, we conclude that the behavior of the officers, who were unaware that the informant's license was suspended, was not outrageously dangerous. Therefore, we affirm Dixon's conviction.

# Facts and Procedural History

[3] On the afternoon of September 10, 2012, police officers from the Vigo County Drug Task Force met with a confidential informant at a staging area to organize a controlled buy of cocaine from Dixon. Martin Dooley, the lead detective, had the informant call Dixon to arrange the purchase of $100 worth of cocaine. Detective Dooley searched the informant's clothing and car, which she did not own, and equipped her with $100 in buy money and an audiovisual device that

was used to record the buy. The informant drove to Dixon's home, followed by Detective Dooley and other officers. Dixon got into the informant's car, asked her to drive around, and gave her a plastic baggie corner containing white powder in exchange for the $100. The informant returned Dixon to his home, met the officers at the staging area, and gave the powder to Detective Dooley. The detective field-tested the powder, which tested positive for cocaine. A forensic scientist at the Indiana State Police laboratory later determined that the powder weighed .86 grams and contained cocaine.

[4]     The State charged Dixon with class B felony dealing in cocaine. Dixon filed a motion to suppress "all property seized by the arresting officers, all observations made by the arresting officers, and all statements and conduct made by [Dixon]," asserting that the informant "had a suspended driver's license at the time of the controlled buy" and that the officers "acted in bad faith when they knowingly/negligently put a[n] unlicensed driver behind the wheel of a car that was not hers for the purpose of obtaining a controlled buy from [Dixon]." Appellant's App. at 70, 71. At the suppression hearing, Detective Dooley testified that he did not become aware that the informant's license was suspended until after the controlled buy; that he was not aware if the informant had insurance on the car, which he did not "believe" was hers; that the informant stopped at "stop signs and stop lights" during the operation; and that he had assumed that the informant had been cleared to drive in prior controlled buy operations. Suppression Tr. at 49, 35. Dixon offered into evidence the informant's official driver record, which reflected her suspended status as well

as numerous instances of driving while suspended, speeding, and failure to provide proof of insurance. Defendant's Suppression Ex. D. The informant did not testify at the hearing. The trial court denied Dixon's motion to suppress, concluding that the police conduct was not so "outrageously dangerous" as to justify excluding evidence. Appellant's App. at 134.

[5] At Dixon's jury trial, Detective Dooley testified without objection about the controlled buy, that the powder field-tested positive for cocaine, and that the State Police lab confirmed that the powder contained cocaine. The State Police forensic scientist testified without objection that the powder contained cocaine and weighed .86 grams. Tr. at 173. The informant did not testify. Dixon took the stand and admitted that he sold cocaine to the informant but claimed that he had been entrapped. The jury found him guilty as charged.

## Discussion and Decision

[6] Dixon argues that the trial court erred in admitting evidence regarding the controlled buy at trial. "We review rulings on the admission of evidence for an abuse of discretion. An abuse of discretion occurred if the trial court misinterpreted the law or if its decision was clearly against the logic and effect of the facts and circumstances before it." *Miles v. State*, 51 N.E.3d 305, 309-10 (Ind. Ct. App. 2016) (citation omitted), *trans. denied*. More specifically, Dixon contends that the evidence should have been excluded because the police officers' use of an unlicensed driver to conduct the controlled buy was

"outrageously dangerous," citing *Osborne v. State*, 805 N.E.2d 435 (Ind. Ct. App. 2004), *trans. denied*.

[7] To preserve a claim of error in the admission of evidence, a party must object each time the allegedly inadmissible evidence is offered. *Evans v. State*, 30 N.E.3d 769, 776 (Ind. Ct. App. 2015), *trans. denied*. Failure to do so results in waiver of the issue on appeal. *Id*. Although Dixon timely objected to evidentiary exhibits such as the cocaine, the audio recording of the controlled buy, and the State Police lab test results, he failed to object to Detective Dooley's testimony regarding the controlled buy and the cocaine as well as the forensic scientist's testimony regarding the cocaine. Consequently, he has waived this issue for review. *See id*. (finding waiver where defendant objected to photo of money but failed to object to testimony that money had been found on his person).

[8] Waiver notwithstanding, we find no abuse of discretion here. In *Osborne*, David Turner told police that "he would be bringing Osborne to French Lick and that Osborne had cocaine in his possession." 805 N.E.2d at 437. Police arranged for Turner, who was on home detention and told them that "he had been drinking all day and had consumed cocaine," to drive through town over the posted speed limit so that they could stop his car and search Osborne for cocaine. *Id*. This plan was carried out, and Osborne was charged with cocaine possession. He "filed a motion to suppress the evidence seized during the traffic stop[,]" which was denied. *Id*. at 438.

On appeal, another panel of this Court noted that "the Indiana constitution provides more liberal protection against search and seizure than does the federal constitution[,]" that "when evidence is obtained in violation of the constitution, such evidence may not be used against a defendant at trial[,]" and that "the exclusionary rule is designed to deter police misconduct." *Id.* at 439 (citation, quotation marks, and alteration omitted). The *Osborne* court stated,

> Our research has revealed no reported case in any American jurisdiction similar to the circumstances presented here. The nearest available analogy is to a "controlled buy" situation. A "controlled buy" occurs when an undercover police officer or a private citizen acting as an agent of the police under strict police supervision and control purchases illegal drugs from a dealer. Indiana courts have long approved of this investigatory practice. The key to the controlled buy is that the police are in control of the situation at all times. However, this case is easily distinguished from a controlled buy in light of compelling public policy concerns.
>
> ….
>
> Inasmuch as it is a policy of the utmost importance to the State of Indiana to prevent impaired driving, we find the police officers' conduct in this case to have been outrageously dangerous. The state trooper knew from the conversation with Turner that Turner had been drinking and consuming cocaine that day. The police flouted Indiana's public policy by agreeing to a plan that required Turner, a man they knew to have ingested both alcohol and cocaine, to drive upon our public highways in such a condition. They released a missile over which they had no control in the form of a Honda Prelude onto the streets of southern Indiana by not only failing to prevent Turner from driving, but actually encouraging him to drive by agreeing to and acting upon this plan. We cannot condone the actions of the

police under these circumstances, and we extend the exclusionary rule to cover not only illegal conduct, but also outrageously dangerous conduct such as this by the police.

….

Moreover, the police by their actions encouraged Turner to violate the terms of his home detention.…

….

…. Because the actions of the police could certainly be considered outrageously dangerous in these circumstances, we find that the intrusion here by the police was unreasonable. Inasmuch as reasonableness is the touchstone of the constitutional analysis, Osborne's rights under Indiana Constitution Article I, Section 11 were violated.[1] Thus, his motion to suppress should have been granted.

*Id*. at 439-41 (citations omitted).

[10]     Dixon argues that,

> [j]ust as in *Osborne*, the police officers in this case were not reacting to a dangerous situation when they allowed the confidential informant to drive on a suspended license and without insurance. While it is true that [Detective Dooley] testified he was not aware the CI had a suspended license, this was something that the officer could (and should) have known before working with the informant. Like the officers in *Osborne*,

---

[1] Article 1, Section 11 states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

the officers here were so motivated by their desire to apprehend Dixon that they were blinded to the obvious dangers of not performing a routine background check on the informant to ensure that it was safe for her to drive.

Appellant's Br. at 9-10.[2]

[11] The State asserts that, "[u]nlike the informant in *Osborne*, the informant in this case was not intoxicated and was not directed to violate any terms of incarceration. Further, unlike in *Osborne*, the illegal conduct at issue—driving while suspended—was not encouraged or directed by the police." Appellee's Br. at 11. These assertions are supported by the record. Detective Dooley testified that he was unaware of the informant's license suspension and had simply assumed that she had been cleared to drive in prior controlled buy operations. Although the better practice would have been to check the informant's driving and insurance status before conducting the controlled buy, we cannot conclude that the failure to do so was, or resulted in, outrageously dangerous behavior in this case. Indeed, Detective Dooley testified that he and his fellow officers "observed [the informant] throughout the entire process" and that she stopped at "stop signs and stop lights." Suppression Tr. at 54, 34. In the words of the *Osborne* court, the informant was "under strict police

---

[2] Dixon also asserts that "the informant apparently lied to Detective Dooley and told him that she was licensed to drive. Had he run a license check, he would have discovered that she lacked credibility and could not be trusted as an informant." Appellant's Br. at 10 (citing Suppression Tr. at 32). Detective Dooley testified, "[W]e *usually* ask [confidential informants] what their status is on their license." Suppression Tr. at 32 (emphasis added). He did not specifically state that he posed this question to the informant in this case.

supervision[,]" and "the police [were] in control of the situation at all times." 805 N.E.2d at 439.

[12] Under these facts and circumstances, we cannot conclude that the actions of the police were outrageously dangerous. As such, waiver notwithstanding, we cannot conclude that the trial court abused its discretion in admitting evidence regarding the controlled buy. We affirm Dixon's conviction.

[13] Affirmed.

Najam, J., and Robb, J., concur.