**Glenn BEASEY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 06A01–0406–CR–277.

Court of Appeals of Indiana.

March 11, 2005.

Richard K. Milam, Lebanon, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Following a bench trial, Glenn Beasey was convicted of Operating While Intoxicated,[1] a class C misdemeanor. Beasey raises two issues for review:

1. Did the police officer validly stop his car for a traffic infraction?

2. Was the evidence sufficient to support his conviction?

We affirm.

The facts most favorable to the judgment demonstrate that around midnight on July 6, 2003, Lebanon Police Officer Aaron Altier was on patrol in his marked vehicle when he heard a car's tires spinning. Altier turned to look and observed a car, eventually determined to be driven by Beasey, pulling out of a liquor store parking lot with its wheels spinning and back-end fishtailing. Rather than letting off the gas pedal, Beasey accelerated causing the car to continue fishtailing as the wheels failed to grip the road that was wet from rain.

Altier decided to initiate a traffic stop for an unsafe start, a class C traffic infraction, and turned his car around to follow Beasey. Altier witnessed Beasey make a quick left turn. Beasey signaled as he turned but barely decelerated. Beasey made two more turns and Altier activated his lights and then his siren. After Altier activated his lights, Beasey turned once more and drove approximately a quarter of a mile. When Altier activated his siren, Beasey stopped abruptly in the middle of the road rather than pulling to the side.

Altier approached the vehicle and requested Beasey's driver's license. While speaking to Beasey, Altier noticed a strong odor of alcohol emanating from Beasey. Beasey's eyes were glassy, semi-hooded, and red, and he slurred his speech. Altier instructed Beasey to exit his car so that Altier could perform field sobriety tests. While Altier explained the tests, Beasey leaned against the hood of Altier's police car. Altier proceeded to give Beasey three field sobriety tests—the finger-count test, the backward test, and the one-leg-stand test. Beasey failed all three. Altier then offered Beasey a portable breath test, which Beasey refused. Altier read Beasey the implied consent law and offered Beasey a chemical test, which Beasey also refused. Altier placed Beasey under arrest and transported him to the Boone County Jail where Altier offered the chemical test a second time but Beasey again refused.

On July 7, 2003, the State charged Beasey with operating while intoxicated (OWI), a class A misdemeanor. A bench trial occurred May 27, 2004. At the conclusion of the evidence, the trial court found Beasey guilty of the lesser offense of OWI, a class C misdemeanor. Beasey received a sixty-day sentence with all but fourteen days suspended. On appeal, Beasey claims that the trial court erred in finding that Altier's traffic stop was valid and that the State presented insufficient evidence to support his conviction.

1.

■ At trial, Beasey essentially argued that any evidence from the traffic stop should be suppressed because the stop was invalid. Specifically, Beasey claims he did not violate Ind.Code Ann. § 9–21–8–23 (West, PREMISE through 2004 2nd Regu-

---

1. Ind.Code Ann. § 9–30–5–2 (West, PREM- ISE through 2004 2nd Regular Sess.).

lar Sess.) and make an unsafe start. The trial court disagreed and held the stop was valid.

■ When reviewing a trial court's decision to deny a motion to suppress, our review is similar to other sufficiency matters. *Osborne v. State,* 805 N.E.2d 435 (Ind.Ct.App.2004). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

■ It is well settled that the police may briefly detain an individual if they have reasonable suspicion to support the stop. *Frye v. State,* 757 N.E.2d 684 (Ind. Ct.App.2001). We consider the totality of the circumstances in evaluating whether an officer had a reasonable suspicion, and review de novo the trial court's determination. *Id.* It is also well settled that a police officer may stop a vehicle when he or she observes a traffic violation. *Peete v. State,* 678 N.E.2d 415, 419 (Ind.Ct.App. 1997) ("a police officer may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation"). In this case, Altier initiated a traffic stop because of his belief that Beasey had committed a traffic infraction, namely, an unsafe start. Pursuant to I.C. § 9–21–8–23 and I.C. § 9–21–8–49 (West, PREMISE through 2004 2nd Regular Sess.), it is a class C infraction to "start a vehicle that is stopped, standing, or parked until the movement can be made with reasonable safety."

At trial, Altier testified that he heard car tires spinning and then observed Beasey's car pulling out of a parking lot with its tires spinning and the backend of the car fishtailing. Altier heard the engine noise increase and observed the vehicle continue to fishtail as the driver accelerated rather than letting off of the gas pedal on wet pavement. Altier testified Beasey was "not driving in a safe manner" and was not in control of the vehicle. *Transcript* at 40. Thereafter, Altier decided to follow the car and stop it for the unsafe start.

Beasey relies on *Dora v. State,* 736 N.E.2d 1254 (Ind.Ct.App.2000), to argue that Altier's stop was invalid because what Altier observed was not an unsafe start. In *Dora,* an officer observed the defendant "over-accelerate" the vehicle he was driving causing the tires to spin and squeal and smoke to roll out of the car's tires. *Id.* at 1255. The officer initiated a traffic stop and cited Dora for an unsafe start pursuant to I.C. § 9–21–8–23. *Dora v. State,* 736 N.E.2d 1254. In reversing defendant's conviction for an unsafe start, the court held:

> [A]fter carefully reviewing the evidence most favorable to the trial court's judgment, we find that there simply was no evidence adduced at trial that Dora's commencement of the right-hand turn constituted a threat to himself or anyone else. While it certainly is conceivable that spinning one's tires to the point that they begin to squeal and smoke might, under a different set of facts, be unreasonably safe, here, there was no evidence offered of any danger created by this conduct, either to Dora or anyone else. Nor did the State provide any evidence that Dora started his vehicle before said movement could be made with reasonable safety. The fact that Dora spun and squealed his tires does not ipso facto mean said conduct violated the "reasonable safety" mandate, which is the essence of the statutory prohibition.

*Id.* at 1257. We find the instant case readily distinguishable. Here, unlike *Dora*, additional evidence was presented that Beasey's start was unsafe thus creating a danger to himself or others, viz., Beasey's car fishtailed as he overaccelerated on wet pavement and he was not in control of the vehicle. Despite the fishtailing, Beasey continued to accelerate thus exacerbating the problem. This conduct, we believe, does violate the reasonable safety mandate of the unsafe start statute and endangered Beasey, as well as his wife who was a passenger in the car at the time. Altier's traffic stop of Beasey for violating I.C. § 9–21–8–23 was valid.[2]

### 2.

██ Beasey also claims that the State failed to present sufficient evidence to support his OWI conviction. Our standard of review in sufficiency of the evidence claims is well settled:

> We will not reweigh the evidence or consider the credibility of witnesses. Only the evidence most favorable to the verdict together with all reasonable inferences that can be drawn therefrom will be considered. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed.

*King v. State,* 799 N.E.2d 42, 46 (Ind.Ct. App.2003) (quotations omitted). To establish OWI as a class C misdemeanor, the State needed to prove beyond a reasonable doubt that Beasey operated a vehicle while intoxicated. I.C. § 9–30–5–2. To demonstrate that Beasey was intoxicated the State was required to prove that Beasey was "under the influence of: (1) alcohol . . . so that there is an impaired condition of thought and action and the normal control of a person's faculties to an extent that endangers a person." I.C. § 9–13–2–86 (West, PREMISE through 2004 2nd Regular Sess.); *see also Mann v. State,* 754 N.E.2d 544, 547 (Ind.Ct.App.2001) ("[i]ntoxication may also be established through evidence of consumption of significant amounts of alcohol, impaired attention and reflexes, watery or bloodshot eyes, an odor of alcohol on the breath, unsteady balance, failed field sobriety tests and slurred speech").

When Altier initiated a traffic stop based on Beasey's unsafe start he smelled a strong odor of alcohol on Beasey's breath, observed that Beasey's eyes were glassy, semi-hooded, and red, and that Beasey was slurring his words. After Beasey exited his car to perform field sobriety tests, he leaned on the hood of Altier's police car. Altier testified that this mannerism contributed to his opinion that Beasey was intoxicated because, "[i]t's

---

**2.** In arguing the stop was invalid, Beasey asserts it is critical that Altier "acknowledged that there was no danger created by what he observed," *Appellant's Brief* at 13, based on the following exchange on cross-examination:

[Defense Counsel]: Okay. Now. You've told us that you heard spinning tires?
[Altier]: Yes.
[Defense Counsel]: And you heard an accelerating engine?
[Altier]: Correct
[Defense Counsel]: Well, and you thought that he accelerated onto South Street going east in an unusual manner?

[Altier]: Yes.
[Defense Counsel]: Not necessarily dangerous in any way, never left his lane did he?
[Altier]: No.

*Transcript* at 39. Altier's response to counsel's compound question is far from an unequivocal acknowledgement that Beasey's actions did not create danger. Indeed, Altier also testified that Beasey's driving was unsafe because he was not in control of his car on wet pavement. Essentially, Beasey asks us to reweigh the evidence, something we refuse to do. *See Osborne v. State,* 805 N.E.2d 435.

not normal for somebody on a traffic stop to feel comfortable enough to just lean on a police car." *Transcript* at 25. Additionally, Beasey failed the three field sobriety tests Altier administered and twice refused to take a chemical test for intoxication. The probative evidence and reasonable inferences drawn therefrom clearly support Beasey's conviction.[3]

Judgment affirmed.

SHARPNACK, J., and BAKER, J., concur.

---

3. Beasey also asserts that the trial court erred in finding that two cases he relied on to support his insufficiency argument—*Jones v. State*, 161 Ind.App. 236, 315 N.E.2d 403 (1974) and *Hartman v. State*, 401 N.E.2d 723 (Ind.Ct.App.1980)—were no longer applicable because of the subsequent enactment of I.C. § 9–30–5–3. Beasey cited these cases for the propositions that the smell of alcohol (*Jones*), or the smell of alcohol combined with bloodshot eyes (*Hartman*), are insufficient as a matter of law to establish intoxication. Regardless of whether these cases remain good law, Beasey's reliance on them is misplaced. Here, the State provided additional, and substantial, evidence of intoxication, e.g., failure of three field tests, slurred speech, and refusal to take a chemical test.