No. 124,127

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JACK GARNER,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

SYLLABUS BY THE COURT

1.

To find that a driver violated K.S.A. 8-1547, the court must determine whether the driver started their vehicle from a stop without reasonable safety under the specific circumstances.

2.

A driver's acceleration of a car from a stop that causes the engine to rev and the tires to spin and squeal—without more—is insufficient to constitute a violation of K.S.A. 8-1547 when there are no other circumstances suggesting that the acceleration was not reasonably safe.

Appeal from Trego District Court; THOMAS J. DREES, judge. Opinion filed December 23, 2022. Reversed and remanded with directions.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Charles P. Bradley*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before WARNER, P.J., HURST, J., and TIMOTHY G. LAHEY, S.J.

HURST, J.:  The Kansas Department of Revenue suspended Jack Garner's driver's license for driving under the influence, and after judicial review the district court upheld that suspension. Garner now appeals, challenging the arresting officer's reasonable suspicion for performing the stop on his vehicle that led to his driver's license suspension. Finding that the officer lacked reasonable suspicion to believe Garner had violated the law, this court reverses the district court's decision to uphold the suspension of Garner's driver's license and remands with instructions.

FACTUAL AND PROCEDURAL HISTORY

The relevant facts are straightforward. On July 27, 2020, at about 9:20 p.m., the arresting officer was on patrol in WaKeeney when he observed Garner's truck stopped at a stop sign. The officer had the window of his patrol car down and was around 200 or 300 feet away from Garner's truck when he heard a car engine "roar" and tires screech. He described the sound as "not just a little screech like you would accidentally hit it, but it was, you know, someone laying into the gas." The officer looked back toward Garner and observed him "spinning [the truck's] tires all the way around until it got . . . directly onto 13th Street and straightened up." He testified that he observed Garner spinning his tires for "several feet."

While the arresting officer heard Garner's tires screech and witnessed the tires spinning, he did not see any typical driving infractions. The officer did not observe Garner leave his lane of travel, fishtail, or commit a speeding violation, but he decided to stop Garner's truck exclusively based on "[excessive] acceleration of the tires." The officer claimed Garner's acceleration violated K.S.A. 8-1547, which provides:  "No person shall start a vehicle which is stopped, standing or parked unless and until such movement can be made with reasonable safety." This traffic stop eventually led to

2

Garner's arrest for driving under the influence. The facts supporting Garner's arrest for driving under the influence are not relevant to this appeal.

Under the statutory requirements, Garner was served with the officer's certification and notice of driver's license suspension, and the Kansas Department of Revenue (KDOR) affirmed the suspension of Garner's driver's license. Garner petitioned for review of KDOR's administrative suspension order in Trego County District Court, arguing, among other things, that the traffic stop based on his screeching tires was unconstitutional because the officer lacked the requisite reasonable suspicion to initiate the stop. The district court conducted a de novo bench trial and upheld KDOR's administrative suspension order, finding the officer had reasonable suspicion to initiate a traffic stop based on Garner's violation of K.S.A. 8-1547. Garner appeals.

DISCUSSION

The sole issue presented here is whether the district court erred in holding that the arresting officer had reasonable suspicion to initiate the traffic stop of Garner. Helpfully, the parties agree on the relevant facts but disagree on whether those facts provided the officer with a particularized and objective basis for suspecting that Garner violated K.S.A. 8-1547.

*Standard of Review*

Appeals from the administrative suspension of driver's licenses are subject to review under the Kansas Judicial Review Act. K.S.A. 2021 Supp. 8-259(a); K.S.A. 77-601 et seq.; *Rosendahl v. Kansas Dept. of Revenue*, 310 Kan. 474, 480, 447 P.3d 347 (2019). On appeal, Garner, as the party asserting the error, carries the burden of proving the invalidity of KDOR's suspension of his driver's license. See K.S.A. 77-621(a)(1); see

3

also K.S.A. 2021 Supp. 8-1020(q) ("Upon review, the licensee shall have the burden to show that the decision of the agency should be set aside.").

This court reviews the district court's factual findings in upholding KDOR's suspension of Garner's license for "substantial competent evidence" but reviews de novo its legal conclusions. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019); *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). Substantial competent evidence is both relevant and substantive, and provides a substantial basis of fact from which the issues can reasonably be resolved. In reviewing the district court's factual findings, this court will not reweigh the evidence, redetermine the credibility of witnesses, or redetermine questions of fact. *Creecy*, 310 Kan. at 469. However, this court conducts its legal analysis of those facts anew, without reliance on or deference to the district court's legal analysis.

*Governing Legal Principles*

The Fourth Amendment to the United States Constitution protects persons from unreasonable government seizure and provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Kansas Constitution Bill of Rights likewise prohibits unreasonable searches and seizures. Kan. Const. Bill of Rights, § 15. "[A] traffic stop, even one leading to administrative rather than criminal proceedings, is a seizure" under the Fourth Amendment and section 15. *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 171, 473 P.3d 869 (2020); see *State v. Jimenez*, 308 Kan. 315, 322, 420 P.3d 464 (2018) ("A routine traffic stop is a seizure under the Fourth Amendment."); *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 636, 176 P.3d 938 (2008) ("A traffic stop is not magically converted to a 'nonseizure' when it leads to a civil or administrative rather than a criminal proceeding.").

4

An officer's decision to seize someone by pulling them over constitutes a valid seizure under the Fourth Amendment if the officer has "specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *State v. Cash*, 313 Kan. 121, Syl. ¶ 2, 483 P.3d 1047 (2021); see K.S.A. 22-2402; *Strickert v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 1, Syl. ¶ 3, 462 P.3d 649 (2020). When an officer lacks those specific, articulable facts, the seizure may violate the Fourth Amendment, assuming no exception applies. In such cases if the traffic stop is unconstitutional, the court may set aside KDOR's administrative suspension of a person's driver's license. See K.S.A. 2021 Supp. 8-1020(o)-(p); *Jarvis*, 312 Kan. at 167-69; *Whigham v. Dept. of Revenue*, 312 Kan. 147, 152, 473 P.3d 881 (2020).

The parties' entire dispute revolves around this court's interpretation of K.S.A. 8-1547, the statute the officer alleged supported Garner's traffic stop. When interpreting a statute, if the Legislature's intent in enacting the statute is ascertainable, this court must defer to that intent. *Montgomery v. Saleh*, 311 Kan. 649, 654-55, 466 P.3d 902 (2020). The Kansas Supreme Court has explained that:

> "When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. [An appellate court] will only review legislative history or use canons of construction if the statute's language or text is ambiguous. [Citations omitted.]" *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021).

Contrary to Garner's assertion, the question of what conduct violates K.S.A. 8-1547 appears to be an issue of first impression in Kansas. Garner mistakenly asserts that the Kansas Supreme Court has previously determined this issue in his favor. See *City of Altamont v. Finkle*, 224 Kan. 221, 579 P.2d 712 (1978). While the defendant's conduct in *Finkle* was much like Garner's conduct here, the legal issue in that case was

distinguishable from the issue here. In *Finkle*, the court held that the complaint charging Finkle with "exhibition of speed" was defective because it failed to charge an offense "with enough clarity and detail to inform the defendant of the criminal act with which he is charged." 224 Kan. 221, Syl. ¶ 1. The court in *Finkle* did not address whether the conduct at issue could be prosecuted if properly charged, but determined the charging document was defective. Moreover, the *Finkle* court examined an ordinance similar to K.S.A. 8-1565, a statute prohibiting racing on highways—not the statute at issue in this case. 224 Kan. at 222. Cases like *Finkle*—analyzing or interpreting K.S.A. 8-1565—do not help the analysis in this case.

Garner also wrongly relies on the district court's decision in his DUI criminal case that arose from the same traffic stop. Not only is the district court's full decision not in the record on appeal, it is immaterial to this current analysis because Garner relies on the district court's discussion of whether he committed an "exhibition of speed or acceleration" as prohibited by K.S.A. 8-1565—which is not the issue currently on appeal—and it involves a different legal standard and burden of proof. Garner's present appeal claims only that the officer lacked reasonable suspicion to stop Garner for violating K.S.A. 8-1547. The district court's analysis of Garner's violation of a different statute (K.S.A. 8-1565) is not relevant to this court's current analysis.

K.S.A. 8-1547 provides:  "No person shall start a vehicle which is stopped, standing or parked unless and until such movement can be made with reasonable safety." Neither this court nor the Kansas Supreme Court have defined the conduct that violates this statute, and the parties provide little guidance on how this court should interpret the statutory language. But the plain statutory language is clear, and other state courts' interpretations of similar statutory language provide this court with some persuasive authority in determining the meaning and scope of K.S.A. 8-1547. The language in K.S.A. 8-1547 is identical to that contained in § 11-603 of the Uniform Vehicle Code (UVC), and the same or similar language has been adopted by multiple states. See, e.g.,

Ind. Code § 9-21-8-23; N.Y. Vehicle and Traffic Law § 1162; Iowa Code § 321.313; Fla. Stat. § 316.154. And the Kansas Legislature's intent in enacting portions of the UVC was "to make uniform the law of those states which enact it." See K.S.A. 8-2203 ("This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it."). This statute specifically prohibits starting a vehicle from a stopped, standing, or parked position in an unsafe manner and is often called the unsafe-start statute.

Indiana has an unsafe-start statute that is almost identical to the Kansas statute at issue here—and the UVC—which provides that "[a] person may not start a vehicle that is stopped, standing, or parked until the movement can be made with reasonable safety." Ind. Code § 9-21-8-23. The Indiana Court of Appeals has interpreted and applied its equivalent statute to a case with a substantially similar fact pattern to this case. *Dora v. State*, 736 N.E.2d 1254 (Ind. Ct. App. 2000). In *Dora*, a police officer observed John Dora stopped in his vehicle at an intersection. As Dora turned right, the officer observed him "'over-accelerate' the vehicle he was driving, causing the tires on his car to spin and squeal for approximately three to four seconds" and with enough force to cause smoke to roll out from the car's tires. 736 N.E.2d at 1255. The officer then stopped Dora and cited him for a violation of the state's unsafe-start statute, and the Indiana trial court found Dora guilty of violating the statute.

The Indiana Court of Appeals reversed Dora's conviction and reasoned:

"The statute makes clear that a driver may not start a vehicle that is stopped, standing, or parked, until such movement can be made with reasonable safety. While we consider it to be unwise, in most circumstances, to over-accelerate one's car thereby causing the tires to spin and squeal, there is nothing in the statute specifically prohibiting such conduct at all times. Had the Legislature intended for the provisions of this traffic regulation to prohibit the spinning and squealing of one[']s tires in all circumstances, it could have easily provided for such regulation.

7

. . . .

"[A]fter carefully reviewing the evidence most favorable to the trial court's judgment, we find that there simply was no evidence adduced at trial that Dora's commencement of the right-hand turn constituted a threat to himself or anyone else. While it certainly is conceivable that spinning one's tires to the point that they begin to squeal and smoke might, under a different set of facts, be unreasonably safe, here, there was no evidence offered of any danger created by this conduct, either to Dora or anyone else. Nor did the State provide any evidence that Dora started his vehicle before said movement could be made with reasonable safety. The fact that Dora spun and squealed his tires does not ipso facto mean said conduct violated the 'reasonable safety' mandate, which is the essence of the statutory prohibition." 736 N.E.2d at 1256-57.

Contrarily, the Indiana Court of Appeals again confronted this issue with a different set of facts in which it found the stop appropriate. See *Beasey v. State*, 823 N.E.2d 759 (Ind. Ct. App. 2005). In *Beasey*, a police officer observed Glenn Beasey "pulling out of a liquor store parking lot with its wheels spinning and backend fishtailing." 823 N.E.2d at 760. Beasey did not correct the action, but continued to accelerate and fishtailed through the turn on a wet roadway. The officer initiated a traffic stop of Beasey based on his violation of the state's unsafe-start statute. The Indiana appellate court upheld the validity of the stop, finding that Beasey's conduct violated the statute and was distinguishable from the conduct evaluated in its prior decision in *Dora*. 823 N.E.2d at 762. The court explained that "unlike *Dora*, additional evidence was presented that Beasey's start was unsafe thus creating a danger to himself or others, viz., Beasey's car fishtailed as he overaccelerated on wet pavement and he was not in control of the vehicle." 823 N.E.2d at 762.

New York's unsafe-start statute similarly provides that "[n]o person shall move a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety." N.Y. Vehicle and Traffic Law § 1162. Like the Indiana

8

Court of Appeals, New York state courts have held that merely accelerating a vehicle from a stop in a manner that causes the tires to squeal does not violate the statute. See *People v. Riggs*, 60 Misc. 3d 817, 80 N.Y.S.3d 649 (N.Y. City Ct. 2018) (finding no violation of the statute, even when accelerating to the point of causing tires to squeal, when there was no evidence that defendant was driving in excess of the legal speed limit, no evidence of any hazardous driving conditions, and no evidence that the car was out of control); *People v. Rebecca P.*, No. CR12-0577, 2012 WL 6582613 (Canandaigua City Ct. 2012) (unpublished opinion) (finding that squealing tires and speeding away from intersection was not sufficient to establish a violation of the statute when there was no evidence that indicated the car's movement was not reasonably safe). But see *People v. Petri*, 152 A.D.3d 1089, 59 N.Y.S.3d 584 (2017) (finding that an officer had probable cause to stop a vehicle under the unsafe-start statute because "defendant made an immediate turn to the right and rapidly accelerated on a city street past numerous pedestrians, some within 5 to 10 feet of his vehicle, while causing his tires to loudly squeal and spin for a protracted period of time").

Other appellate courts examining statutes nearly identical to K.S.A. 8-1547 have stated in dicta that squealing tires alone do not violate their respective unsafe-start statutes. See *State v. Howard*, No. 16-0137, 2017 WL 108466, at *2 n.4 (Iowa Ct. App. 2017) (unpublished opinion) ("The State does not explain how squealing tires fits the elements of an unsafe start under section 321.313. That section prohibits motorists from moving their cars until they can do so 'with reasonable safety.'"); *Donaldson v. State*, 803 So. 2d 856, 859 (Fla. Dist. Ct. App. 4th 2002) ("There is no indication that squealing tires alone constitutes a traffic infraction. We are at a loss to understand how squealing tires without more constitutes a danger to public safety.").

However, at least one state court agrees with the district court here that a driver squealing their tires is sufficient to permit an officer to initiate a traffic stop under a statute with a reasonable-safety provision similar to K.S.A. 8-1547. See *Singleton v.*

*State*, 91 S.W.3d 342 (Tex. App. 2002). In *Singleton*, a police officer stopped Wayne Singleton after observing him "making a right turn fast enough and sharp enough to squeal the tires and make the tires spin out." 91 S.W.3d at 345. A Texas appellate court agreed, finding that squealing tires was enough to provide the officer with probable cause to stop Singleton. But, the Texas statute was slightly broader than the statute at issue here in that it related to turning or sideways movement and provided: "An operator may not turn the vehicle to enter a private road or driveway, otherwise turn the vehicle from a direct course, or move right or left on a roadway unless movement can be made safely." Tex. Transp. Code Ann. § 545.103 (Vernon 1999). The court explained:

> "In the present case, although [the officer] testified he did not stop Singleton for driving unsafely, he also testified, '[Singleton] made the turn in an unsafe manner and caused his tires to spin out.' He further testified, 'any time you make a turn where your tires are squealing, it's unsafe.' Based on the totality of the circumstances, the specific objective, articulable facts of the officer, in light of the officer's experience and personal knowledge, together with inferences from those facts, were sufficient to support the trial court's finding of reasonable suspicion that a traffic violation had occurred. This point of error is overruled." 91 S.W.3d at 347-48.

The majority of states have determined that finding a violation of statutes similar to K.S.A. 8-1547 requires a determination of whether the driver's conduct in starting their vehicle was not reasonably safe under the specific circumstances. As the Kansas Supreme Court has recognized, courts should look for guidance from surrounding states to interpret these statutes patterned after the UVCA and seek uniformity in those interpretations. See *State v. Marx*, 289 Kan. 657, 670, 215 P.3d 601 (2009). This court joins most of state courts that have addressed this statutory language in holding that a driver's acceleration from a stop that causes the car's engine to rev and tires to squeal and spin is insufficient to constitute a violation of K.S.A. 8-1547 when there are no other circumstances showing that the acceleration was not reasonably safe. The plain text of the statute unambiguously requires that stopped vehicles must begin moving "with

10

reasonable safety," and nothing more. K.S.A. 8-1547. Clearly, the facts presented here—an acceleration causing the engine to rev and the tires to squeal and spin—could contribute to a violation of the statute. However, the revving engine and squealing and spinning tires alone do not demonstrate that Garner accelerated without "reasonable safety" as required by K.S.A. 8-1547. The essence of the unsafe-start statute is that it prohibits unsafe conduct, and the officer here did not identify any conditions or circumstances—such as wet road conditions, construction, the presence of other vehicles or pedestrians, or obstructions—that made Garner's acceleration unsafe.

While the officer testified that "there's no way that a driver is going to have any control of that vehicle" when its tires are spinning, his description of Garner's driving demonstrated that Garner did have control and moved his vehicle with reasonable safety. Garner maintained control of his vehicle, stayed in his lane, and did not swerve or fishtail. Nor was there any evidence of poor road conditions that might have required extra caution, nor did the officer testify that other cars or pedestrians were nearby. This court cannot say that every acceleration that causes the car's engine to rev and tires to spin and squeal is not reasonably safe.

The officer provided no specific, articulable facts that created a reasonable suspicion Garner violated K.S.A. 8-1547 because the only facts upon which the officer relied—the revving engine coupled with squealing and spinning tires—do not violate the statute. Because the officer did not identify any specific facts or circumstances that demonstrated Garner accelerated without reasonable safety, he lacked reasonable suspicion that Garner violated K.S.A. 8-1547. Although the responding officer may have genuinely believed that Garner had violated K.S.A. 8-1547 when he heard the engine rev and tires squeal, "[t]he reasonable suspicion analysis requires use of an objective standard based on the totality of the circumstances, not a subjective standard based on the detaining officer's personal belief." *Cash*, 313 Kan. 121, Syl. ¶ 7. This court does not

11

doubt the good-faith intention and belief of the arresting officer, but that is not enough to support the constitutionality of Garner's seizure in these circumstances.

CONCLUSION

Garner's acceleration in a manner that caused his engine to rev and his tires to squeal and spin did not violate K.S.A. 8-1547, and thus the officer who witnessed this conduct could not have possessed the reasonable suspicion necessary to support a traffic stop. The officer violated Garner's Fourth Amendment right against unreasonable seizures by conducting the stop based on a violation of K.S.A. 8-1547, and the judgment of the district court is therefore reversed and remanded with instructions to set aside KDOR's administrative order suspending Garner's driver's license because the stop was unlawful.

Reversed and remanded with directions.